Minute Order Form   (rev. 12/90)

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | *ROBERT W. GETTLEMAN* | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | **00 C 6675  01 C 62** | Date | July 17, 2001 |
| Case Title | Sram Corp.   v   AD-II Engineering  AD-II Engineeering   v   Sram Corp. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [use listing in "MOTION" box above]

(2)  ☐  Brief in support of motion due _____

(3)  ☐  Answer brief to motion due _____  Reply to answer brief due _____

(4)  ☐  ☐ Ruling / ☐ Hearing  on _____ set for _____ at _____

(5)  ☐  Status hearing ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(6)  ☐  Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(7)  ☐  Trial ☐ Set for ☐ re-set for _____ at _____

(8)  ☐  ☐ Bench Trial ☐ Jury Trial ☐ Hearing  held and continued to _____ at _____

(9)  ☐  This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to
     ☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)

(10) ☒  [Other docket entry]

### Memorandum opinion and order dated 7/9/01 entered. Accordingly, AD-II's motion for summary judgment of noninfringement is granted as to literal infringement and denied as to infringement under the doctrine of equivalents.

(11) ☒  [For further detail see ☐ order on the reverse of ☒ order attached to the original minute order form.]

| | | | number of notices | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | ED-7 FILED FOR DOCKETING  JUL 18 2001 | date docketed | Document # |
| | Notified counsel by telephone. | 01 JUL 17 PM 2: 36 | docketing dpty. initials | 49 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | date mailed notice | |
| | Copy to judge/magistrate Judge. | | | |
| | courtroom deputy's Initials | Date/time received in central Clerk's Office | mailing dpty. initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | | |
|---|---|---|
| SRAM CORPORATION, | ) | |
| Plaintiff, | ) | No.   00 C 6675 |
| v. | ) | Judge Robert W. Gettleman |
| AD-II ENGINEERING, INC., | ) | |
| Defendant. | ) | |
| ——————————— | ) | |
| AD-II ENGINEERING, INC., | ) | |
| Plaintiff, | ) | No.   01 C 0062 |
| v. | ) | Judge Robert W. Gettleman |
| SRAM CORPORATION, | ) | |
| Defendant. | ) | |

DOCKETED

JUL 18 2001

## MEMORANDUM OPINION AND ORDER

In these consolidated cases, SRAM Corporation has sued defendant AD-II Engineering,

Inc., for infringement of patent no. 5,996,000 (the "000 patent"), and AD-II has sued SRAM for a

declaration that AD-II is not infringing the 000 patent.[1]  AD-II has moved for summary judgment

on its claim of noninfringement.  For the reasons set forth below, the motion is granted in part

and denied in part.

---

[1]SRAM has also sued AD-II for infringing patent no. 4,900,291 (the "291 patent"), and
AD-II has sued SRAM for tortious interference with prospective contractual relations.  The
motion presently pending before the court does not implicate either of those claims.

## Facts

Since 1988 SRAM has made and sold twist shifters for use on derailleur-equipped bicycles under the trade name Grip Shift. The grip shift is a way of shifting gears without removing all or part of the rider's hand from the handlebar. Instead, the rider changes gears by twisting part of the grip. AD-II, a Taiwan company, also sells a bicycle gear shift system that operates by twisting part of the hand grip. SRAM alleges that AD-II's shifters infringe claims 7 and 8 of the 000 patent.

The 000 patent is entitled "Detente Spring for Rotatable Grip Actuating System." The application for the 000 patent was filed on March 1, 1996, and the patent issued on December 2, 1997. As originally filed, the application included four independent claims numbered 30, 36, 38, and 44. Prosecution claim 36 (which became claim 7 of the issued patent) provided:

> 36. A rotatable hand grip actuating system for releasing or pulling a tensioned cable, the system comprising:
>
> a support member having a generally cylindrical outer surface;
>
> a grip disposed over said generally cylindrical outer surface of said support member and rotatable relative thereto in a first direction and in a second direction opposite said first direction, a generally cylindrical inner surface of said grip facing said outer surface of said support member, one of said inner surface and said outer surface having a plurality of detent positions formed therein; and
>
> a detent spring disposed between said grip and said support member and engageable with one of said detent positions, said detent spring providing a first resistence against being forced out of said one detent position when said grip is rotated with respect to said support member in said first direction, said detent spring providing a second resistence against being forced out of said one detent position when said grip is rotated relative to said support

2

member in said second direction, said second resistence being greater than said first resistence.

On September 6, 1996, the patent examiner allowed prosecution claims 38-41, and 43, but rejected claims 30-37, 42, and 44-48. Claims 30 and 36 were rejected under 36 U.S.C. § 112(a) as "vague and indefinite" because "Antecedent basis is lacking in the form of language followed by a reference character, for `support member' . . .." Claim 36 was also rejected under 36 U.S.C. § 102(b) as "clearly anticipated by applicants' admitted prior art."[2]

In response to the rejections, SRAM amended the application in two significant respects. First, with respect to the rejection under 36 U.S.C. § 112 (a) for lack of an antecedent basis for the term "support member," SRAM amended the portion of the specification detailing the first preferred embodiment by inserting the phrase "or support" after the word "retaining" in the phrase "spring retaining member" and added the numerical designation 40 after the word "member" on page 10, line 16 of the original application, thus supplying an antecedent basis and character reference for the term "support member". As amended, the portion of the specification (ultimately accepted by the patent examiner) that first references the term "support member" reads:

> The stationary portion of the rotatable grip actuating system includes the mandrel 20 (FIG. 4) and a spring retaining or support member 40 having an outwardly facing generally cylindrical surface in which is formed a spring retaining elongated notch 42.

With respect to the rejection based on the prior art, SRAM amended prosecution claim 36 to clarify that the spring claimed was metal rather than plastic by adding the words "spring

---

[2]The patent office rejected other the claims for reasons unrelated to the instant motion.

metal" before the word "detent". Thus, prosecution claim 36 which was accepted as claim 7 of the 000 patent reads:

> 7. A rotatable handgrip actuating system for releasing or pulling a tensioned cable, the system comprising:
>
> a support member having a generally cylindrical outer surface;
>
> a grip disposed over said generally cylindrical outer surface of said support member and rotatable relative thereto in a first direction and in a second direction opposite said first direction, a generally cylindrical inner surface of said grip facing said outer surface of said support member, one of said inner surface and said outer surface having a plurality of detent positions formed therein; and
>
> a spring metal detent spring disposed between said grip and said support member and engageable with one of said detent positions, said detent spring providing a first resistance against being forced out of said one detent position when said grip is rotated with respect to said support member in said first direction, said detent spring providing a second resistance against being forced out of said one detent position when said grip is rotated relative to said support member in said second direction, said second resistance being greater than said first resistance, the difference between the first and second resistance due at least in part to the shape of the detent spring.

## **Summary Judgment Standard**

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. <u>See</u> Fed. R. Civ. P. 56(e); <u>Becker v. Tennenbaum-Hill Assoc., Inc.</u>, 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most

favorable to the party opposing the motion. See <u>Fisher v. Transco Services-Milwaukee, Inc.</u>, 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Stewart v. McGinnis</u>, 5 F.3d 1031, 1033 (7th Cir. 1993). The moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." <u>Anderson</u>, 477 U.S. at 252.

## Discussion

AD-II has moved for summary judgment of noninfringement, arguing that the accused device lacks certain elements of claim 7. Specifically, AD-II argues that claim 7 requires that the shifter spring be retained by a stationary non-rotating element, but that the spring in the accused device is held by a rotating element.

The determination of whether an accused device infringes a patent requires a two-step analytical approach. First, the claims of the patent must be construed to determine the proper scope. Second, a determination must be made as to whether the properly construed claims read on the accused device. <u>Interactive Gift Express Inc. v. Compuserve, Inc.</u>, 231 F.3d 859, 864 (Fed. Cir. 2000). With respect to the first step, claim construction, "[w]hen the meaning or scope of a patent claim is in dispute the court construes the claim as a matter of law." <u>Jackson v. Casio PhoneMate, Inc.</u>, 105 F. Supp. 2d 858, 863 (N.D. Ill. 2000). Only those terms in controversy

need be construed, and only to the extent necessary to resolve the controversy. Id. To construe

the claims, the court first examines the intrinsic evidence, which consists of the patent claims,

specification, and, if in evidence, the prosecution history. Id. If the intrinsic evidence alone is

insufficient, extrinsic evidence may be used. Extrinsic evidence is external to the patent and file

history, such as expert testimony, inventor testimony, dictionaries, technical treatises, articles,

and prior art not cited. Id. Intrinsic evidence is preferred because it encompasses the materials in

the public record. Therefore, if the intrinsic evidence alone resolves any ambiguity, it is

improper to rely on extrinsic evidence. Id.

 Not all intrinsic evidence is equal, however, and the Federal Circuit has delineated a

hierarchy. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1577 (Fed. Cir. 1996). First, the

court examines the language of the claim. Id.; Pitney Bowes, Inc. v. Hewlett Packard Co., 182

F.3d 1298, 1305 (Fed. Cir. 1999) ("The starting point for any claim construction must be the

claims themselves."). Then, the court looks to the rest of the intrinsic evidence, beginning with

the specification and concluding with the prosecution history. Id. at 15.

 If the claim language is clear on its face, the court's consideration of the rest of the

intrinsic evidence is "restricted to determining if a deviation from the clear language of the

claims is specified. A deviation may be necessary if 'a patentee [has chosen] to be his own

lexicographer and used terms in a manner other than their ordinary meaning.'" Interactive Gift,

231 F.3d at 865 (quoting Vitronics, 90 F.3d at 1582). A deviation may also be necessary if a

patentee has relinquished a potential claim construction in an amendment to the claim or in an

argument to overcome or distinguish a reference. Id. If, on the other hand, the claim language is

6

not clear on its face, then the court considers the rest of the intrinsic evidence to resolve, if possible, the lack of clarity. Id.

When referring to the specification to construe claim terms, the court must take care to "avoid reading limitations in the specification . . . into [the] claims." Id. (quoting Intervet Am. Inc. v. Kee-Vet Lab, Inc., 887 F.2d 1050, 1053 (Fed. Cir. 1989). There is a fine line between reading a claim in light of the specification, and reading a limitation into the claim from a specification. Id. at 866 (citing Comark Communications Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998). In locating this fine line the court must remember that it looks "to the specification to ascertain the meaning of the claim term as it is used by the inventor in the context of the entirety of his invention, not merely to limit the claim term." Id.

### Construction of Claim 7

As noted, at issue in this case is the meaning of the term "support member" as used in claim 7. The court begins, as it must, with the language of the claim (Vitronics, 90 F.3d at1582):

7. A rotatable handgrip actuating system for releasing or pulling a tensioned cable, the system comprising:

a support member having a generally cylindrical outer surface;

a grip disposed over said generally cylindrical outer surface of said support member and rotatable relative thereto in a first direction and in a second direction opposite said first direction, a generally cylindrical inner surface of said grip facing said outer surface of said support member, one of said inner surface and said outer surface having a plurality of detent positions formed therein; and

a spring metal detent spring disposed between said grip and said support member and engageable with one of said detent positions, said detent spring providing a first resistance against being forced out of said one detent position when said grip is rotated with respect to said support member in said first direction, said detent

7

> spring providing a second resistance against being forced out of
> said one detent position when said grip is rotated relative to said
> support member in said second direction, said second resistance
> being greater than said first resistance, the difference between the
> first and second resistance due at least in part to the shape of the
> detent spring.

000 patent, column 8, lines 25-45.

SRAM argues that "support member" must be given its ordinary meaning. Quoting Random House Webster's Collegiate Dictionary, SRAM argues that "support" means to "bear or hold up (a load, mass, structure, etc.)" or to "sustain or withstand (weight, pressure, strain, etc.)," while member refers to "a constituent part of any structural or composite whole." Applying the "plain meanings" to the claim, SRAM argues that the "support member" is "a portion of the shifter that cooperates with the other components of the shifter to bear a portion of the load of the handgrip and the spring when the shifter is in operation and when the spring engages the detent position or notches." Thus, SRAM argues that nothing in the plain language requires the support member to be stationary and nothing requires the support member to "retain" the spring. Indeed, SRAM argues that the claim suggests the opposite by providing that "a spring metal detent spring [is] disposed between said grip and said support member."

Read literally, the language of claim 7 contains no limitation that the "support member" is either stationary or spring retaining. The court does not read the claims in a vacuum, however, but rather "in view of the specifications of which they are a part." Markman v. Westview Instruments, 52 F.3d 967, 979-80 (Fed. Cir. 1995). As noted above, claim 7 (prosecution claim 36) was initially rejected by the examiner as "vague and indefinite" because "antecedent basis is lacking in the specification, in the form of language followed by a reference character for

8

'support member'." As explained by SRAM's counsel at oral argument, the reason for the rejection was that the term support member had never been used in the specification and had not been identified on any of the drawings. To overcome this rejection, SRAM was required to and did amend the specifications both to introduce the term "support member" and to give it a drawing character reference. It accomplished this task by amending the description of the first preferred embodiment in the specification at page 10, line 16 of the original application, adding the phrase "or support" after the word retaining in the phrase "spring retaining member" and, the numerical designation "40" after the word member. The examiner ultimately accepted this amendment, leaving the final patent specification to read (column 5, lines 1-5):

> The stationary portion of the rotatable grip actuating system includes the mandrel 20 (FIG. 4) and a spring retaining of support member 40 having an outwardly facing generally cylindrical surface in which is formed a spring retaining elongated notch 42. [All character references are to FIG. 4 which is attached to this opinion as Exhibit A]

It is this amendment that gives rise to AD-II's argument that the support member must be stationary, because the term was first identified in the portion of the specification describing the "stationary portion of the rotatable grip actuating system." To support this argument, AD-II cites to two separate sections of the amendment. First, in summarizing the response submitted to overcome the antecedent basis rejection, the remarks accompanying the amendment state "to overcome this rejection with respect to 'support member', Applicants have amended the detailed description at p.10 line 16, to make clear that the spring retaining member 40 (itself an extension of mandrel 20) is the support member recited in the claims." Next, AD-II points to the last substantive paragraph of the remarks, which states:

This specification has also been amended to correct an incorrect description of the operation of the device. With reference to FIGS. 5 and 6 and FIGS. 3 and 4, it is clear that mandrel 20 and spring-retaining or support member 40 are affixed to handlebar 12 of the bicycle. Handgrip 18, to which is affixed wall 56 with detents 50, 52 and 54, is rotated by the rider around the mandrel 20. Hence it is wall 56 and handgrip 18 which are rotated, and any passage describing the rotation of mandrel 20 or spring-retaining member 40 is incorrect. Amendments to the Detailed Description beginning at line 9 at page 11 and continuing to line 15 at page 12 correct the description of the operation of the device . . ..

AD-II argues that together these remarks demonstrate that the term "support member" as used throughout the claims must always retain the spring and must always be stationary, with the wall 56 and handgrip 18 being the only elements that rotate.

At first glance, this argument is appealing in its simplicity. Closer examination reveals certain flaws with such a simplistic view. First, as pointed out by the court at oral argument, the third preferred embodiment of the final patent describes a mode of the invention in which the "spring retaining member is rotated in either direction with respect to the wall 56 . . .." (000 patent, column 6, lines 45-47). AD-II suggests that in light of the amendment, the retention of this language in the third preferred embodiment referring to rotation of the spring retaining member is a mistake, and the court should either ignore the third preferred embodiment or construe the patent as not reading upon it. An interpretation that defines the invention in a manner that excludes a preferred embodiment is rarely, if ever, correct, however, and requires highly persuasive evidentiary support not present in the instant case. See Vitronics, 90 F.3d at 1583; Modine Mfg. Co. v. United States Int'l Trade Comm'n., 75 F.3d 1545, 1550 (Fed. Cir. 1996).

Moreover, it is clear that the attorney remarks in the amendment referred to above are restricted to the description of the first two preferred embodiments. When SRAM amended the

specifications to provide the antecedent basis for "support member" it did so in its description of the first preferred embodiment. But identifying the support member as the same element (40) as the spring retaining member, simply means that the support member is the same thing as the spring retaining member. In the first two preferred embodiments, the spring retaining member (40) must be stationary. In the third preferred embodiment, however, the spring retaining member rotates. This conclusion is buttressed by the wording of the remark that tends, at first glance, to indicate that the support member must always be stationary. That paragraph (quoted above) specifically refers to FIGS. 5 and 6 and FIGS. 3 and 4, which are the drawings of the first two preferred embodiments. The paragraph makes no reference to FIGS. 8 and 9, which detail the third preferred embodiment. Therefore, the court rejects AD-II's argument that SRAM disclaimed patent coverage of shifters in which the spring retaining or support member rotates.

The court agrees with AD-II, however, that the support member must retain the spring. To overcome the lack of an antecedent basis rejection, SRAM identified the term support member as element 40 – – the spring retaining member. In its briefs, SRAM again argues that the amendment refers to the first and second preferred embodiments only and, therefore, the support member must be the spring retaining member in the first two preferred embodiments only. At oral argument, however, SRAM's counsel admitted numerous times that the support member is element 40 throughout the specifications.

> THE COURT: I may be missing something here.
> In that you're saying – – as I'm reading the third preferred embodiment, you're saying that the spring retaining member – – remember, you don't use support member there; you only use spring retaining member.

MR. JANOSKI: "No. 40, it's no. 40, whether you call it–identify it as spring retaining member or support member, it's item 40. Its part no. 40."(Transcript May 30, 2001, p.26 ll. 12-20)

MR. JANOSKI "...and after that, he could have used, if he would have said like here, spring retaining or support member 40, well now 40 can be used identified as either spring retaining or support member throughout the detailed description of the preferred embodiment." (p. 36 l. 23 - p.37 l. 2)

Therefore, the support member is element 40 in all embodiments, and it is the spring retaining member in all embodiments. In preferred embodiment one and two the spring retaining or support member must be stationary, and in preferred embodiment three it may rotate.

Having determined that the term "support member" is simply another phrase for the term spring retaining member, construction of the claim is simple. One need only substitute "spring retaining" for "support" throughout claim 7 to achieve clarity.

a [spring retaining] member having a generally cylindrical outer surface;

a grip disposed over said generally cylindrical outer surface of the said [spring retaining] member and rotatable relative thereto in a first direction and in a second direction opposite the said first direction, a generally cylindrical inner surface of said grip facing said outer surface of said [spring retaining member] one of said inner surface and said outer surface having a plurality of detent positions formed therein.

The term support member is construed to mean spring retaining member. There is little disagreement between the parties as to the term "a generally cylindrical inner surface of said grip facing said outer surface of said support member, one of said inner surface and said outer surface having a plurality of detent positions formed therein." (000 patent, column 8, lines 31-35). The terms "inner," "outer," and "facing" all refer to the orientation of the support member and handgrip. The inner surface of the grip (wall 56) must face the outer surface of the support

12

member such as element 42 in Exhibit A. The detent position of notches must be on either the inner surface of the grip (wall 56) or on the outer surface of the support member.

### Infringement

The second step in the infringement analysis is to compare the limitations of the construed claim to the accused device. Read Corp. v. Portec, Inc., 970 F.2d 816, 821 (Fed. Cir. 1993). An accused device will literally infringe only if it contains every limitation in the asserted claim. Enercon GmbH v. Int'l Trade Comm'n, 151 F.3 13 76, 1384 (Fed. Cir. 1998). If the accused device does not contain every element of the asserted claim, the device may nonetheless infringe under the "doctrine of equivalents" if the differences are insubstantial. Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 234 F.3d 558 (Fed. Cir. 2000).

#### Literal Infringement

In the instant case, literal infringement of claim 7 rests on whether AD-II's device 1) has a "support member" and, 2) if so, whether the plurality of detent notches are located on the outer surface or the inner surface of the grip. A picture of the actual accused device is attached to this opinion as Exhibit B. As is readily apparent, the device contains a spring retaining support member identified as character no. 15. The plurality of detent positions or notches, however, are not located on either the outer cylindrical surface of no. 15, nor on the inner cylindrical surface of the grip, which in AD-II's device is identified as no. 14. Instead, the detent position or notches (no. 16) are located on the inner cylindrical surface of what appears to be described as the housing on the patented device (Exhibit A, no. 16). Therefore, the accused device does not contain one of the limitations of claim 7, and it does not literally infringe claim 7 of the 000 patent.

13

## Infringement Under the Doctrine of Equivalents

Under the doctrine of equivalents "a product or process that does not literally infringe on the express terms of a patent may nonetheless be found to infringe if there is `equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." Warner-Jenkinson Co. Inc. v. Hilton Davis, Chem. Co., 520 U.S. 17, 21 (1977) (quoting Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605 (1950)). It is designed to prevent unscrupulous copyists from making unimportant and insubstantial changes and substitutions in the patented device which, though adding nothing, would be enough to take the copied matter outside the claim. Graver, 339 U.S. at 607. "To temper unsparing logic and prevent an infringer from stealing the benefit of the invention, a patentee may invoke this doctrine to proceed against the producer of a device if it performs substantially the same function in substantially the same way to obtain the same result." Id. "The theory on which it is founded is that `if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape.'" Id. (quoting Union Paper-Bag Machine Co. v. Murphy, 97 U.S. 120, 125 (1877)). "An element in an accused product is equivalent to a claimed element if the differences between the two are insubstantial to one of ordinary skill in the art." Overhead Door Corp. v. The Chamberlain Group, 194 F.3d 1261, 1269 (Fed. Cir. 1999). Infringement, therefore, is not avoided by merely reversing or transposing parts or components, or a mere change in form without a change in function. Corning Glass Works v. Sumitomo Elec. USA, Inc., 671 F. Supp. 1369, 1399 (S.D. N.Y. 1987).

The doctrine of equivalents "attempts to strike a balance between insuring that the patentee enjoys the full benefit of his patent and ensuring that the claims give fair notice of the patent's scope." Festo, 224 F.3d at 564. This balance can be easily upset because "the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement." Id. (quoting Warner-Jenkinson, 52 U.S. at 29).

Prosecution history estoppel is a key tool used to prevent the doctrine of equivalents from vitiating the notice function of claims. Festo, 234 F.3d at 564. "Prosecution history estoppel precludes a patentee from obtaining under the doctrine of equivalents coverage of subject matter that has been relinquished during the prosecution of its patent application." Id. (quoting Pharmacia & UpJohn Co. v. Mylan Pharms., Inc., 170 F.3d 1373, 1376 (Fed. Cir. 1999). Therefore, actions by the patentee, including claim amendments and arguments made before the Patent Office may give rise to prosecution history estoppel. Id.

In the instant case, AD-II argues that prosecution history estoppel bars SRAM from asserting that any shifter in which the spring retaining member rotates infringes the 000 patent. Specifically, AD-II argues that the Federal Circuit's en banc opinion in Festo prevents SRAM from claiming coverage any broader than that expressed in the amendment and the voluntary attorney comments made as a part of that amendment.

In Festo, the Federal Circuit resolved "certain issues relating to the doctrine of equivalents that remained in the wake of the Supreme Court's decision in Warner-Jenkinson . . . ." Festo, 234 F.3d at 563. Festo identified five such issues, three of which are of particular import to the instant case. First, the court addressed whether for purposes of determining whether an amendment to a claim creates prosecution history estoppel, a "substantial reason

15

related to patentability," is limited to those amendments made to overcome prior art under § 102 and § 103, or whether patentability means any reason effecting the issuance of the patent. Next, the Festo court determined whether a voluntary claim amendment - - one not required by the examiner or made in response to a rejection by an examiner for a stated reason - - creates prosecution history estoppel. Finally, the court determined once a claim amendment creates prosecution history estoppel, what range, if any, of equivalents is available under the doctrine of equivalents for the amended claim.

In answer to the first question, the court held that "'a substantial reason related to patentability' is not limited to overcoming prior art, but includes other reasons related to the statutory requirements for a patent. Therefore, an amendment that narrows the scope of a claim for any reason related to the statutory requirements for a patent will give rise to prosecution history estoppel with respect to the amended claim element." Id. at 563.

In response to the second question, the court held that "voluntary claim amendments are treated the same as other claim amendments; therefore, any voluntary amendment that narrows the scope of the claim for a reason related to the statutory requirements for a patent will give rise to prosecution history estoppel with respect to the amended claim element." Id. at 563-64. Finally, the court held that when a claim amendment creates prosecution history estoppel, no range of equivalents is available for the amended claim element. Id. Thus, prosecution history estoppel acts as a complete bar to a claim under the doctrine of equivalents. Id. at 569.

Based on these holdings, AD-II argues that because the amendment to provide an antecedent basis for "support member" was made to overcome a rejection relating to a statutory requirement for patentability (§ 112(a)), and the attorney's voluntary comments limiting support

16

member to a stationary structure are voluntary amendments that narrow the scope of claim 7, prosecution history estoppel acts as a complete bar to the application of the doctrine of equivalents.

The court rejects this argument for two reasons. First, to overcome the § 112 rejection, SRAM amended the specification, not the claim. <u>Festo</u> applies to "amended <u>claim</u> elements" <u>Id.</u> at 563 (emphasis added), not amendments to specifications. There were no new claim elements added in the amendment. Nor is there any indication that the patent office considered the claim as initially written unpatentable. It merely needed a reference character for the term support member.

Second, <u>Festo</u> (and prosecution history estoppel) applies only to an amendment that "narrows the scope of a claim for a reason related to the statutory requirements for a patent . . .." <u>Id.</u> As this court has already held above, by simply identifying the support member to be the spring retaining member, the amendment did not narrow the scope of the claim.

Finally, as this court also held above, the voluntary comments in the amendment were not directed toward a claim element, but were simply clarifying the description of one preferred embodiment. Accordingly, the court concludes that prosecution history estoppel does not bar application of the doctrine of equivalents.

Infringement under the doctrine of equivalents is a question of fact, however, generally to be decided by the trier of fact. <u>Jackson</u>, 105 F. Supp. 2d at 863. Whether AD-II's device performs substantially the same function, in substantially the same way, to achieve substantially the same result as the patented invention, or whether the differences between the two are substantial to one of ordinary skill in the art, is a question of material fact that remains in dispute.

Accordingly, AD-II's motion for summary judgment of noninfringement under the doctrine of equivalents denied.

## **Conclusion**

For the reasons set forth above, AD-II's motion for summary judgment of noninfringement is granted as to literal infringement and denied as to infringement under the doctrine of equivalents.

**ENTER:**     **July 9, 2001**

Robert W. Gettleman
United States District Judge



*FIG. 3*

*FIG. 4*

**FIG. B**

